TRENTON DEVELOPMENT COMPANY *v.*
VILLAGE OF TRENTON.

MUNICIPAL CORPORATIONS—SPOT ZONING—RESIDENCE USE.

Spot zoning by amendatory village ordinance *held*, unconstitutional as applied to plaintiff's 3 lots located in 3-block area upgraded and limited to single- and 2-family dwelling use from area permitting multiple dwellings or business uses and there is complete absence of fact or inference in the record tending to show relationship of amendatory ordinance as here applied to the public health, safety or welfare (Village of Trenton Ordinances Nos 117 and 157).

Appeal from Wayne; Brennan (John V.), J. Submitted January 12, 1956. (Docket No. 49, Calendar No. 46,686.) Decided April 2, 1956.

Bill by Trenton Development Company, a Michigan corporation, against the Village of Trenton, a municipal corporation, to declare zoning ordinance void as to its property. Decree for plaintiff. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

58 Am Jur, Zoning § 39.

Small area within limits of a zone, in which are permitted uses different from or inconsistent with those permitted in the larger area ("spot zoning"). 128 ALR 740; 149 ALR 292.

*Milton M. Maddin,* for plaintiff.

*Guiney & Guiney,* for defendant.

BLACK, J.  January 17, 1944, defendant village of Trenton adopted ordinance No 117 providing for a comprehensive zoning plan of areas located within its corporate limits.  The ordinance divided the village into 7 classes of use districts.  Residential A, B and C and Business 2, designated by the ordinance as R–A, R–B, R–C and B–2, are the classifications that are presently important.  R–A permits single-family dwellings, R–B single- and 2-family dwellings, R–C single- and 2-family dwellings and multiple dwellings for 3 or more families, and B–2 permits business establishments.

August 18, 1952 the defendant village adopted ordinance No 157, amending the ordinance of January 17, 1944.  The 1952 ordinance upgraded, from R–C to R–B, an area composed of nearly 3 city blocks.

This 3-block area comprises the area, bounded north by Truax street, east by Detroit river, south by Atwood avenue, and west by an alley bisecting the 2-block area which lies north of Atwood and south of Truax between Jefferson avenue and Riverside drive.  The mentioned 3-block area is illustratively designated on the presently incorporated map which, with legends as indicated, is the focal part of plaintiff's exhibit 7.  Said exhibit 7 is known in the record as the "latest zoning map" of the village.

Plaintiff is owner of 3 lots located within the mentioned 3-block area.  They are situated between Riverside drive on the west and the Detroit river on the east, and have frontages of 66 feet and varying depths of from 300 feet to in excess of 500 feet.

Plaintiff's bill, filed January 30, 1953, assails as unreasonable the ordinance of 1952 and alleges that it violates as applied to such lots the due process and

equal protection clauses of the Federal and Michigan Constitutions. Defendant duly answered in defense of such ordinance. The case came to trial before the Honorable John V. Brennan, circuit judge of the 3d circuit, and resulted in decree favoring plaintiff. From such decree the defendant village has appealed.

Defendant's zoning scheme of 1944 directs our attention to an area within the village which is shaped like a parallelogram. It extends north from Elizabeth Park about 1-1/8 miles along the Detroit river to Helen avenue, and west from the Detroit river about 1/3 of a mile to Fifth street. The ordinance of 1944 established the classification R–C with respect to approximately 85% of this parallelogram, excepting only as to a smaller area of about 8 city blocks situated in the extreme north sector and bounded on the south partly by Truax street and partly by George street. This smaller area remains classified, per the ordinance of 1944, as R–A and R–B.

The 3-block area which was upgraded by the ordinance of 1952 extends 2 blocks south from Truax street and 1-1/2 blocks west from the Detroit river, all as indicated on the map. Such area is back to back with the business district on the east side of "west" Jefferson. The effect of the later ordinance is that of selection of the 3-block area and placement thereof, as newly-classified R–B, in a much larger adjacent area classified R–C and B–2, and this was done despite the fact that the use-complexion of the neighborhood in vicinity of and including this 3-block area remains unchanged compared with the situation as it stood in 1944. Such being the pivot circumstance, and when consideration is given to the pencil shape of plaintiff's lots (much longer than their width) and their riparian position on the river, the

whimsicality of restriction of such lots to single and 2-family dwellings becomes manifest.

Judge Brennan ruled that ordinance No 157 "as applied to the lots in question, both in law and in fact, is arbitrary and unreasonable and, hence, invalid." He went on to say, by supplemental opinion:

"Viewing all the facts pertinent to the case at bar in the light of the well-known rules and authorities relative to zoning ordinances, the said zoning ordinance embracing only the small area of 2 blocks, the court is of opinion and so finds, that the zoning ordinance as applied to the 2 blocks in question within which the aforementioned lots are located, both in law and in fact, is arbitrary and unreasonable, and, hence, invalid. It may be noted in this connection that the general character of the 2 blocks aforementioned to which the zoning ordinance in question applies, is not particularly different or set apart by reason of location or physical structures thereon from the immediately surrounding neighborhood."

We agree with his conclusion. The above incorporated map with its legends discloses a clear case of constitutionally-offensive "spot zoning."* This comparatively small (less than 3 blocks actually) area, within which plaintiff's lots are situated, is fairly surrounded by a much larger area zoned R–C and B–2, and we are referred to no valid need, in the name of public health, safety, or welfare, for the apparent discrimination against plaintiff which is attempted by the ordinance of 1952. That consideration alone, without regard for other serious questions raised by plaintiff, is sufficient on this record to make a prima facie case of unreasonable zoning legislation. Plaintiff's indisputable showing of spot discrimination, coupled with complete absence of fact

---

* For definition of and collection of authorities dealing with "spot zoning" see 58 Am Jur, Zoning, § 39, p 965; and *Penning* v. *Owens*, 340 Mich 355, at p 367.

or inference in the record tending to show relationship of ordinance No 157 as applied here to the public health, safety, or welfare, dictates affirmance of the decree below under rules given in the concluding paragraphs of *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433).

Affirmed. Costs to plaintiff.

SMITH and REID, JJ., concurred with BLACK, J.

DETHMERS, C. J., and SHARPE, BOYLES, KELLY, and CARR, JJ., concurred in affirmance.