COMMITTEE FOR SENSIBLE LAND USE v GARFIELD
TOWNSHIP

Docket No. 58740. Submitted October 5, 1982, at Grand Rapids.—
Decided April 5, 1983.

Plaintiffs, Committee for Sensible Land Use and the City of
Traverse City, brought an action in the Grand Traverse Circuit
Court against defendants, Garfield Township and John F. Por-
ritt, the township zoning administrator, after the township
granted a rezoning application for certain property located
about two miles south of Traverse City, Michigan. The property
involved was rezoned from single and multiple family residen-
tial units to a shopping center district. The property, along
with adjacent property, was to be the site of a large shopping
mall. The circuit court, William R. Brown, J., granted defen-
dants' motion for a summary judgment and dismissed plaintiffs'
action. Plaintiffs appeal alleging that the rezoning violated the
Michigan environmental protection act and that the rezoning
was unreasonable and arbitrary due to the failure of the
township to properly consider the environmental impact of the
rezoning on the region. *Held:*

1. The township and its zoning administrator could be subject
to the Michigan environmental protection act under MCL
691.1202(1), since any party may bring an action for declara-
tory and equitable relief against any other party to protect the
environment from pollution, impairment or destruction.

2. Zoning, as it authorizes land use, can ultimately affect
natural resources. Virtually all human activities can be found
to adversely impact natural resources in some way or other.
Yet, a court is not empowered to enjoin any conduct which does
not rise to the level of an environmental risk proscribed by the

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pollution Control §§ 494, 499.
[2] 61A Am Jur 2d, Pollution Control § 534.
[3, 9] 82 Am Jur 2d, Zoning and Planning § 46.
[4] 82 Am Jur 2d, Zoning and Planning §§ 356, 358.
[5, 6] 82 Am Jur 2d, Zoning and Planning § 27.
[7] 82 Am Jur 2d, Zoning and Planning § 279.
[8] 82 Am Jur 2d, Zoning and Planning § 15.

Michigan environmental protection act. The standard, "has, or is likely to pollute, impair or destroy" natural resources, is a limitation as well as a grant of power. Therefore, the real question is whether such action can be found to rise to the level of impairment or destruction of natural resources so as to constitute an environmental risk and justify judicial intervention.

3. The mere act of rezoning does not in and of itself sufficiently impact the environment to destroy or even impair natural resources, therefore, the Michigan environmental protection act does not apply to the actions complained of and judicial intervention based on the act would have been improper.

4. The act of rezoning itself is not an environmental threat justifying the application of the Michigan environmental protection act. The natural resources can be adequately protected by application of the act to a later stage of land use regulation, for example, when building permits are issued to the developer.

5. The lower court's determinations that the Michigan environmental protection act was inapplicable to the rezoning and that the action was premature were correct. Summary judgment was properly granted on this issue since plaintiffs' complaint failed to state a claim upon which relief could be granted.

6. The plaintiffs bear the burden of showing that the zoning is arbitrary and capricious and, therefore, invalid.

7. A community acts arbitrarily and capriciously when it zones in a manner which adversely affects the general public welfare.

8. The township was required to consider the environmental effect of its zoning decision on the surrounding region. Such consideration should not be held to be inadequate so as to invalidate the ordinance unless it was so deficient as to be found unreasonable, arbitrary and capricious under the circumstances. Here, the record establishes that the township's planning commission considered the regional environmental effect of its decision to rezone. Plaintiffs failed to allege sufficient facts showing environmental impact of the rezoning on the region, thus, the rezoning cannot be found to be arbitrary and capricious.

Affirmed.

1. ACTIONS — ENVIRONMENT — PARTIES.

The Michigan environmental protection act provides that any

party may bring an action for declaratory and equitable relief against any other party to protect the environment from pollution, impairment or destruction (MCL 691.1202[1]; MSA 14.528[202][1]).

2. ENVIRONMENT — INJUNCTIONS.

Virtually all human activity can be found to adversely impact natural resources in some way or other, however, a court is not empowered to enjoin any conduct which does not rise to the level of an environmental risk proscribed by the Michigan environmental protection act; the real question is whether such action can be found to rise to the level of impairment or destruction of natural resources so as to constitute an environmental risk and justify judicial intervention (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.).*

3. ZONING — ENVIRONMENT — REZONING.

The mere act of rezoning a parcel of land does not in and of itself sufficiently impact the environment so as to destroy or even impair natural resources; the act of rezoning itself is not an environmental threat justifying the application of the provisions of the Michigan environmental protection act to such rezoning (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.).*

4. COURTS — APPEAL — ZONING.

The Court of Appeals reviews *de novo* an action appealed from a lower court regarding the validity of municipal zoning decisions; however, the Court is inclined to give considerable weight to the finding of the trial court in such equity cases.

5. ZONING — GOVERNMENTAL INTEREST — EXCLUSION OF LEGITIMATE USE.

A plaintiff, in order to successfully challenge a municipal zoning ordinance, must prove that there is no reasonable governmental interest being advanced by the zoning classification or that the ordinance is unreasonable because of the arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.

6. ZONING — BURDEN OF PROOF.

Zoning ordinances are presumed to be valid; it is the burden of a party attacking an ordinance to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction on the owner's use of his property; it must appear that the clause attacked is an arbitrary fiat and that there is no room for a legitimate difference of opinion concerning its reasonableness.

7. ZONING — USE OF PROPERTY.

A property owner, in order to sustain an attack on a zoning ordinance, must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted.

8. ZONING — PUBLIC WELFARE.

A community acts arbitrarily and capriciously when it zones in a manner which adversely affects the general public welfare.

9. ZONING — TOWNSHIPS — REGIONAL ENVIRONMENTAL EFFECT — APPEAL.

A township is required to consider the environmental effect of its zoning decisions on the surrounding region including their impact on property values and natural resources; such consideration should not be held to be inadequate unless such consideration was so deficient as to be found unreasonable, arbitrary and capricious under the circumstances (MCL 125.271 *et seq.;* MSA 5.2963[1] *et seq.).*

*W. Peter Doren,* City Attorney, and *James M. Olson,* of counsel, for plaintiffs.

*Running, Wise & Wilson* (by *William L. Wise),* for defendants.

Before: R. B. BURNS, P.J., and MACKENZIE and T. L. BROWN,* JJ.

T. L. BROWN, J. Plaintiffs appeal as of right from a summary judgment granted by the lower court dismissing their claim against Garfield Township (township) and its zoning administrator, defendant John F. Porritt.

Plaintiffs' cause of action arose when the township granted a rezoning application on August 15, 1979, to Gerald A. Oleson and Francis Oleson, owners, and Dayton-Hudson Properties, holders of an option to purchase, for certain property located about two miles south of Traverse City, Michigan.

* Circuit judge, sitting on the Court of Appeals by assignment.

This property, composed of three parcels consisting of 37 acres, is adjacent to another parcel of land, consisting of about 36 acres, which was zoned as a shopping district in 1973. The township rezoned the property from single and multiple family residential units to a shopping center district. These parcels were to be the site of a large shopping mall named "Buffalo Mall".

Plaintiffs claim *inter alia* (1) that the rezoning violated the Michigan environmental protection act (MEPA), MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* and (2) that the rezoning was unreasonable and arbitrary due to the failure of the township to properly consider the environmental impact of the rezoning on the region.

Plaintiffs challenge the lower court's ruling that the MEPA had no application to the rezoning issue and that plaintiffs' claim under the MEPA was premature.

Without question, the township and its zoning administrator, defendant John F. Porritt, could be subject to the MEPA under MCL 691.1202(1); MSA 14.528(202)(1). Under the act, any party may bring an action for declaratory and equitable relief against any other party to protect the environment from pollution, impairment or destruction. MCL 691.1202(1); MSA 14.528(202)(1). *Whittaker & Gooding Co v Scio Twp,* 117 Mich App 18; 323 NW2d 574 (1982). It is also clear that zoning, as it authorizes land use, can ultimately affect natural resources. However, as the Supreme Court has recognized, virtually all human activities can be found to adversely impact natural resources in some way or other. *West Michigan Environmental Action Council v Natural Resources Comm,* 405 Mich 741, 760; 275 NW2d 538 (1979). Yet, a court is not empowered to enjoin any conduct which

does not rise to the level of an environmental risk proscribed by the MEPA. *Oscoda Chapter of PBB Action Committee, Inc v Dep't of Natural Resources,* 403 Mich 215, 232-233; 268 NW2d 240 (1978). In this respect, the standard, "has, or is likely to pollute, impair or destroy" natural resources, is a limitation as well as a grant of power. *Oscoda Chapter of PBB Action Committee, Inc, supra,* p 233; *Whittaker & Gooding Co, supra.* The real question is whether such action can be found to rise to the level of impairment or destruction of natural resources so as to constitute an environmental risk and justify judicial intervention. See *West Michigan Environmental Action Council, supra,* p 760; *Whittaker & Gooding Co, supra; Kimberly Hills Neighborhood Ass'n v Dion,* 114 Mich App 495, 502-510; 320 NW2d 668 (1982).

The mere act of rezoning does not in and of itself sufficiently impact the environment to destroy or even impair natural resources. As noted by the trial court:

"The zoning legislation in issue does not mandate the removal of top soil, the building of roads, the construction of buildings. Section 6.8.2 of the Garfield Township Zoning Ordinance specifically requires, following the amendment of the zoning map, that the developers submit final plans and secure a building permit for construction. By the nature of the zoning legislation, it does not permit construction. The legislative enactment can be revised or repealed. Completely differing zoning classifications can be established, and there is no assurance when, if ever, a building permit will issue for construction consistent with the zoning classification. It is not necessary or appropriate that this Court review the potential environmental impact of zoning activities which by their nature have no likely environmental impact. The issues could be rendered moot by a complete change in the zoning classification. The action is premature."

Since the rezoning itself does not destroy or impair natural resources, the MEPA does not apply to the actions complained of and judicial intervention based on the statute would have been improper.

The Washington cases cited by plaintiffs suggest that zoning should be under the provisions of the MEPA. However, the act of rezoning itself is not an environmental threat justifying the application of the MEPA. Natural resources can be adequately protected by an application of the MEPA to a later state of land use regulation; for example, at the time the building permits are issued to the developer.

We conclude that the lower court's determinations that the MEPA was inapplicable to the rezoning and that the action was premature were correct. Accordingly, plaintiffs' complaint, which is based on the MEPA, failed to state a claim upon which relief may be granted and the grant of summary judgment on this issue is affirmed.

Plaintiffs next challenge the trial court's ruling that Count III of plaintiffs' complaint was also based on the MEPA. Plaintiffs argue that this count is based on traditional zoning analysis. Plaintiffs assert that the township is required to consider the rezoning's impact on regional health, safety and welfare.

This Court's review of the present action is *de novo. Silva v Ada Twp,* 99 Mich App 601, 604; 298 NW2d 838 (1980), *lv gtd* 411 Mich 972 (1981). The standards for determining the validity of municipal zoning decisions are well settled:

" ' "The important principles require that for an ordinance to be successfully challenged plaintiffs prove:

" ' " '[F]irst, that there is *no reasonable governmental interest being advanced* by the present zoning classification itself * * * or

" ' " " '[S]econdly, that an ordinance may be *unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.'* Kropf v Sterling Heights, 391 Mich 139, 158; 215 NW2d 179 (1974).

" ' " 'The four rules for applying these principles were also outlined in *Kropf.* They are:

" ' " '1. '[T]he *ordinance comes to us clothed with every presumption of validity.'* 391 Mich 139, 162, quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

" ' " '2. '[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * *. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is *no room for a legitimate difference of opinion concerning its reasonableness.'* 391 Mich 139, 162, quoting *Brae Burn, Inc.*

" ' " '3. 'Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted.' 391 Mich 139, 162-163.

" ' " '4. 'This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases.' 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962)." ' *Ed Zaagman, Inc v Kentwood,* 406 Mich 137, 153-154; 277 NW2d 475 (1979), quoting *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848 (1976)." *Silva v Ada Twp, supra,* pp 604-605. (Emphasis added.)

It is clear that under these standards the plaintiffs bear the burden of showing that the zoning is arbitrary and capricious and, therefore, invalid.

The question of whether a municipality can zone without consideration of the effect of its decision on the surrounding region has been frequently litigated. *E.g., Southern Burlington County*

*NAACP v Mount Laurel Twp,* 67 NJ 151; 336 A2d 713 (1975), *cert den* 423 US 808; 96 S Ct 18; 46 L Ed 2d 28 (1975); *Save a Valuable Environment v Bothell,* 89 Wash 2d 862; 576 P2d 401 (1978); *Township of River Vale v Orangetown,* 403 F2d 684 (CA 2, 1968); *Associated Home Builders of the Greater Eastbay, Inc v City of Livermore,* 18 Cal 3d 582; 135 Cal Rptr 41; 557 P2d 473 (1976). See, generally, Comment, *The Duty of a Municipality to Consider the Environmental Effect of Its Land Use Planning Decisions Upon the Regional Welfare: Judicial Balancing in the Absence of Interjurisdictional Planning Legislation,* 25 Wayne L Rev 1253 (1979).

In *Village of Euclid v Ambler Realty Co,* 272 US 365, 390; 47 S Ct 114; 71 L Ed 303 (1926), the Court upheld comprehensive zoning. There the Court noted, p 390, "the possibilty of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way". In *Save a Valuable Environment, supra,* p 405, the court held that where a potential exists that a zoning action will cause a serious environmental effect outside the municipality's borders the zoning body must serve the welfare of the entire affected community, and that if it does not do so, it acts arbitrarily and capriciously.

Consistent with the Supreme Court's statement in *Euclid,* Michigan courts have also indicated that a community acts arbitrarily and capriciously when it zones in a manner which adversely affects the general public welfare. See *Certain-Teed Products Corp v Paris Twp,* 351 Mich 434, 464-465; 88 NW2d 705 (1958); *Sisters of Bon Secours Hospital v Grosse Pointe,* 8 Mich App 342, 351-358; 154 NW2d 644 (1967); *Bristow v Woodhaven,* 35 Mich

App 205, 211; 192 NW2d 322 (1971) (overruled by *Kropf v Sterling Heights*, 391 Mich 139, 156-157; 215 NW2d 179 [1974]). In addition, the township enabling act, MCL 125.271 *et seq.;* MSA 5.2963(1) *et seq.,* was amended in 1978 to provide in § 1 that a township zoning board may zone:

"to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare."

Section 3 of the act was also amended to provide that zoning ordinances shall be based on a plan:

*"to conserve natural resources and energy; to meet the needs of the state's residents for food, fiber, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land;* to insure that uses of the land shall be situated in appropriate locations and relationships; to avoid the overcrowding of population; to provide adequate light and air; to lessen congestion on the public roads and streets; to reduce hazards to life and property; to facilitate adequate provision for a system of transportation, sewage disposal, safe and adequate water supply, education, recreation, and other public requirements; and to conserve the expenditure of funds for public improvements and services to conform with the most advantageous uses of land, resources, and properties. *The zoning ordinance shall be made with reasonable consideration, among other things, to the character or each district; its peculiar suitability for particular uses; the conservation of*

*property values and natural resources; and the general*
*and appropriate trend and character of land, building,*
*and population development."* (Emphasis added.)

The amended statute became effective on March
1, 1979, well before the township granted the
rezoning request. Case law and the statute clearly
require the township to consider the environmen-
tal effect of its zoning decision on the surrounding
region.

Section 3 of the township enabling act indicates
that "reasonable consideration" must be given to
conservation of property values and natural re-
sources. Under the statute and traditional zoning
law, a township's consideration of the regional
environmental effect of a zoning ordinance should
not be held to be inadequate so as to invalidate the
ordinance unless its consideration was so deficient
as to be found unreasonable, arbitrary and capri-
cious under the circumstances of the case.

In this case the lower court did not address the
issue of whether the township reasonably consid-
ered the environmental impact of its decision.
However, the record establishes that defendants
held open meetings where the rezoning question
was discussed extensively. Opponents of the rezon-
ing, including plaintiffs, were allowed to detail
their criticisms of the rezoning and the various
studies made in connection with the proposed
development. A traffic study was prepared and
submitted. Several market analyses were consid-
ered which discussed the economic effects of the
proposed development on the region. Defendants
filed a document with the lower court which de-
tailed the planning commission's consideration of
the effect of the rezoning on the region's popula-
tion, sewage disposal and water runoff, including
the rezoning's effect on the economic condition of

the community. The record establishes that the township's planning commission considered the regional environmental effect of its decision to rezone. Because the township complied with its obligation to reasonably consider the environmental impact and plaintiffs failed to allege sufficient facts showing environmental impact of the rezoning on the region, the rezoning cannot be found to be arbitrary and capricious. We hold that plaintiffs have failed to state a claim upon which relief may be granted and summary judgment in favor of defendants is affirmed on that basis.

Affirmed.