HOLLY TOWNSHIP v DEPARTMENT OF NATURAL RESOURCES
(ON REHEARING)

Docket No. 119028. Submitted March 11, 1991, at Detroit. Decided
April 8, 1992; approved for publication May 8, 1992, at 9:00
A.M. Leave to appeal sought.

Holly Township, Mt. Holly Ski Area, Inc., and others filed com-
plaints in the Oakland Circuit Court against the Department of
Natural Resources, Holly Disposal, Inc., and William H. Leoni,
Sr., challenging the issuance of a permit by the DNR to Holly
Disposal and Leoni to construct and operate a solid waste
landfill on the ground that notice of the application was never
published in a newspaper. The court, Fred M. Mester, J., after
finding that the Environmental Protection Act, MCL 691.1201
et seq.; MSA 14.528(201) et seq., had been violated and the
permit issued improperly, granted a permanent injunction
barring Holly Disposal and Leoni from constructing or operat-
ing the landfill, and the DNR from issuing a permit for the
landfill. Holly Disposal and Leoni appealed. The Court of
Appeals, BRENNAN, P.J., and MICHAEL J. KELLY and D. F.
WALSH, JJ., affirmed in part, reversed in part, and remanded,
holding that Mt. Holly Ski Area, Inc., did not have to exhaust
its administrative remedies before bringing an action pursuant
to the Environmental Protection Act, that the permit issued by
the DNR that allowed construction of the landfill was invalid
because the requisite notice had not been given, and that,
because the permit was invalid, the trial court should not have
reached the issue whether a permanent injunction should be
issued. The Court remanded to the DNR to permit proper
issuance of the notice of the permit application and vacated the
permanent injunction. 189 Mich App 581 (1991). The plaintiffs'
motion for rehearing was granted, limited to reconsideration of
the order vacating the permanent injunction.

On rehearing, the Court of Appeals held:

The trial court abused its discretion in granting the injunc-

REFERENCES
Am Jur 2d, Pollution Control §§ 499-502, 581.
See the Index to Annotations under Pollution.

tion. There was insufficient evidence to justify the grant of a permanent injunction.

Injunction vacated.

1. Environment — Courts — Injunctions — Environmental Protection Act.

  To determine whether a plaintiff in an action for injunctive relief under the Environmental Protection Act has established a prima facie case, the trial court must determine whether a natural resource is involved and whether the effect of the activity on the environment rises to the level of impairment that would justify the court's injunction; although all human activities adversely affect natural resources in some way, a court is not empowered to enjoin conduct that does not rise to the level of an environmental risk proscribed by the act (MCL 691.1201 et seq.; MSA 14.528[201] et seq.).

2. Environment — Actions — Burden of Proof — Environmental Protection Act.

  Although the burden of proving environmental pollution or impairment remains with the plaintiff in an action under the Environmental Protection Act, the burden of going forward with the evidence shifts to the defendant once the plaintiff establishes a prima facie case; if the defendant successfully rebuts the prima facie case, the burden of going forward with the evidence shifts back to the plaintiff (MCL 691.1201 et seq.; MSA 14.528[201] et seq.).

*Booth, Patterson, Lee & Need, P.C.* (by *Parvin Lee, Jr.*), for the Township of Holly, Township of Grand Blanc, City of Grand Blanc, and City of Burton.

*Robert L. Bunting,* for Mt. Holly Ski Area, Inc.

*Richard J. Quist,* for Holly Disposal, Inc., and William H. Leoni, Sr.

ON REHEARING

Before: Brennan, P.J., and Michael J. Kelly and D. F. Walsh,* JJ.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendants, the Department of Natural Resources, Holly Disposal, Inc., and William H. Leoni, Sr., previously appealed as of right to this Court from a June 28, 1989, permanent injunction barring Holly Disposal and Leoni from further construction of a solid waste landfill and precluding the DNR from issuing a construction permit for the landfill to Holly Disposal, Inc. We held that Mt. Holly Ski Area, Inc., did not have to exhaust its administrative remedies before bringing its action pursuant to the Environmental Protection Act (MEPA).[1] We further found that the permit issued by the DNR that allowed construction of the landfill was invalid because the DNR failed to give the requisite notice concerning the third application for a construction permit. As a result, we remanded the case to the DNR to issue public notice of Holly Disposal's permit application. In addition, we held that because the permit was invalid, the trial court never should have reached the issue whether a permanent injunction should issue. Therefore, we vacated the permanent injunction. 189 Mich App 581; 473 NW2d 778 (1991).

Plaintiffs subsequently moved for rehearing, arguing that this Court erred in holding that the permanent injunction issued by the trial court in the MEPA action was necessarily invalid because the permit issued by the DNR for construction of the landfill was invalid. Plaintiffs argued that the MEPA action brought by Mt. Holly is independent from the application for a permit to construct and operate a landfill. We agreed and granted rehearing limited to reconsideration of this Court's vacation of the permanent injunction. On rehearing,

---

[1] Under MCL 691.1202; MSA 14.528(202) and MCL 691.1204; MSA 14.528(204), a party may bring an action for permanent equitable relief against any other party to protect the air, water, and other natural resources from pollution, impairment, or destruction.

we consider the merits of the permanent injunction granted by the trial court. We again vacate the permanent injunction.

This Court reviews de novo actions brought under the MEPA. *Portage v Kalamazoo Co Road Comm,* 136 Mich App 276, 279; 355 NW2d 913 (1984). However, the trial court's findings of fact will not be overturned unless they are clearly erroneous or unless the reviewing court is convinced it would.have reached a different result had it occupied the bench at trial. *Id.* The grant or denial of an injunction is within the sound discretion of the trial court. *Dafter Twp v Reid,* 159 Mich App 149, 163; 406 NW2d 255 (1987). Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there is real and imminent danger of irreparable injury. *Id.,* p 163, citing *Wexford Co Prosecutor v Pranger,* 83 Mich App 197, 205; 268 NW2d 344 (1978).

Defendants contend that a prima facie case was not established because the trial court failed to make the dual inquiry mandated. To determine whether a plaintiff has established a prima facie case under the MEPA, the trial court must consider whether a natural resource was involved and whether the effect of the activity on the environment rose to the level of impairment to justify the court's injunction. *Portage, supra,* p 280. There is no question that a natural resource was involved in this case. Whether the impact of the activity rises to the level to justify the court's injunction is a more difficult question to answer. The Michigan Supreme Court has recognized that virtually all human activities can be found to adversely affect natural resources in some way. *Id.,* p 281, citing *West Michigan Environmental Action Council v Natural Resources Comm,* 405 Mich 741, 760; 275

NW2d 538 (1979). However, a court is not empow-
ered to enjoin any conduct that does not rise to
the level of an environmental risk proscribed by
the MEPA. *Portage, supra,* p 281. The applicable
standard, "has or is likely to pollute," is a limita-
tion as well as a power. *Id.,* p 282, citing *Oscoda
Chapter of PBB Action Committee, Inc v Dep't of
Natural Resources,* 403 Mich 215, 233; 268 NW2d
240 (1978).

In this case, it is arguable that Mt. Holly estab-
lished a prima facie case of the likelihood of
pollution. Mt. Holly's witnesses testified that the
landfill would be located on porous sand and
gravel. The witnesses testified that, eventually,
leachate[2] from the landfill would percolate through
the landfill liner, through the sand and gravel, and
down to the ground water and contaminate it
because a recharge[3] area was involved. Mt. Holly's
experts testified that there was insufficient data to
determine whether there was an aquiclude,[4] or
barrier to prevent movement of leachate to the
ground water. Mt. Holly's witnesses testified that
plaintiffs were located below the landfill and that
the groundwater, filled with leachates from the
landfill, would flow in plaintiffs' direction. Once a
plaintiff establishes a prima facie likelihood of
pollution, the burden of proceeding shifts to the
defendant. MCL 691.1203; MSA 14.528(203); *Ray v
Mason Co Drain Comm'r,* 393 Mich 294, 311; 224
NW2d 883 (1975). However, the burden of proof
stays with the plaintiff, and once the defendant

---

[2] Leachate is "the liquid that has percolated through soil or other
medium." *Webster's Third New International Dictionary, Unabridged
Edition* (1965).

[3] Recharge is the replenishment of the ground water reservoir by
the addition of water. Hamblin, *The Earth's Dynamic Systems* (Min-
neapolis: Burgess Publishing Co, 3d ed, 1982) p 510.

[4] An aquiclude is "a geologic formation or stratum that confines
water in an adjacent aquifer." *Webster's Third New International
Dictionary, Unabridged Edition* (1965).

rebuts the prima facie case of the likelihood of pollution, the burden of going forward with the evidence shifts back to the plaintiff. *Id.* The nature of the evidence necessary to rebut the plaintiff's showing varies. *Id.*, pp 311-312.

Defendants' expert witness Kunkle testified that once the contaminants reached the water table they would move horizontally instead of vertically as Mt. Holly's expert had testified, because he believed that the area was a transitional or discharge zone, as opposed to a recharge area. Kunkle believed that any contaminants would be discharged into a marsh area rather than the ground water and plaintiffs' well water. Kunkle also claimed that the liner in the new landfill design was approximately ninety percent effective in preventing leakage. Kunkle testified that there is no scientific engineering design currently on the market that could completely guarantee that leachate would not contaminate the ground water.

We find that the trial court abused its discretion in granting the injunction. *Dafter Twp, supra.* At first glance, the case appears to be a battle between the experts. However, we find that there was insufficient evidence to justify the grant of a permanent injunction. Mt. Holly's main expert, Dr. Mozola, testified that there was insufficient data to determine if an aquiclude existed beneath the landfill site to prevent ground water contamination. He further testified that, unless specifically tested, it would be impossible to state, with any degree of certainty, the extent to which surrounding wells would draw contaminants from under the site because of the nature of the soils. The trial court noted that there had been no testimony regarding whether the levels of leachate reaching the domestic wells would be toxic. There is no indication regarding the impact the leaching

would have under either design of the landfill. The trial court emphasized in its opinion that there was insufficient on-site testing and data upon which the parties' main experts could base their opinions and that their opinions were based on speculation. We also note that Mt. Holly's experts did not comment with regard to the new landfill design proposed by defendants and that there is no testimony regarding whether the allegedly reduced amount of leachate from the new design would result in a likelihood of pollution. Accordingly, we find that there was insufficient evidence upon which to grant the harsh remedy of a permanent injunction and that the trial court abused its discretion in doing so.

Injunction vacated.